# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

  v.                                              Case No. 04-CR-220

**SEAN BRANNON,**
        **Defendant.**

## SENTENCING MEMORANDUM

### I. BACKGROUND

On June 27, 2001, City of West Allis police officers executed a search warrant at the residence of defendant Sean Brannon based on information regarding defendant's involvement in a counterfeit check operation. The officers found evidence of forgery activity as well as a small amount of cocaine (.2 grams) and some ammunition. As a convicted felon, defendant could not possess ammunition. See 18 U.S.C. § 922(g). For reasons that are unknown, the federal government declined to prosecute defendant at that time. However, the state of Wisconsin commenced separate prosecutions for possession of cocaine and forgery. On February 8, 2002, a state court sentenced defendant to 75 days in jail on the cocaine charge, and on July 23, 2003, another state court sentenced him to 36 months in prison on the forgery charge.

Based on defendant's good behavior while incarcerated on the forgery charge, state correctional authorities moved him to a pre-release facility and granted him work-release privileges. However, on September 28, 2004, the federal government charged defendant with felon in possession of ammunition based on the bullets found in his home during the

2001 search. As a result of the federal charge, the state revoked defendant's work-release and returned him to a secure facility.

After a court trial based on stipulated facts, I found defendant guilty of a violation of § 922(g). The probation office prepared a pre-sentence report ("PSR"), which calculated defendant's offense level ("OL") as 12 (base level 14, U.S.S.G. § 2K2.1(a)(6), minus 2 for acceptance of responsibility, § 3E1.1(a)), and his criminal history category as V, for an imprisonment range of 27-33 months. The PSR also recommended that the sentence run concurrently to the undischarged state forgery sentence. Defendant objected to the PSR's calculation of his criminal history and argued for a fully concurrent sentence. The government made no sentencing recommendation. In this memorandum, I set forth the reasons for the sentence imposed.

## II. DISCUSSION

In light of United States v. Booker, 125 S. Ct. 738 (2005), I typically follow a three-step sentencing process. First, I determine the applicable advisory guideline range. Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply. Finally, I determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Pallowick, 364 F. Supp. 2d 923, 925-26 (E.D. Wis. 2005).

### A. Guideline Calculation

Defendant objected to being assessed criminal history points for the possession of cocaine and forgery offenses arising out of the September 2001 search, claiming that such offenses were "part of the instant offense" under U.S.S.G. § 4A1.2(a)(1). However, under

application note 1, conduct that is part of the instant offense means relevant conduct as defined in § 1B1.3. U.S.S.G. § 4A1.2 cmt. n.1. The forgery and cocaine offenses did not fall into this category, thus, I overruled defendant's objection. Neither party requested a departure. Therefore, I turned to the imposition of sentence under § 3553(a).

**B.     Section 3553(a)**

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed--
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

My ultimate task is to "'impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2).'" United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005) (quoting 18 U.S.C. § 3553(a)). I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). Then, to produce a reasonable numerical sentence,

3

I consider the types of sentences available, the guidelines and policy statements, and the need to avoid unwarranted disparity.

### 1. Nature of Offense

The offense was not aggravated. Defendant had the ammunition in his house for some time and stated that he had forgotten about it. He possessed no firearms and had done nothing improper with the ammunition.

### 2. Character of Defendant

Defendant was 32 years old, and although he had a criminal record, there were positive aspects to his character. As to his record, in 1994, he was convicted of operating a motor vehicle without owner's consent and theft by fraud. These convictions were related in that he took a car and then sold it, defrauding the buyer. Later that year, he was convicted of possession of cocaine, failure to pay controlled substance tax, and keeping a drug house, for which he was sentenced to 18 months in prison. The PSR noted that he adjusted well to incarceration and parole, but in 1997, he was convicted of felon in possession of a firearm and sentenced to 12 months in jail. Finally, as noted, he was convicted of possession of cocaine in 2002 and forgery in 2003 as a result of the same search warrant that gave rise to the present offense. Thus, his record was serious, but the convictions, while not technically related under the guidelines, came in groups.

Apart from his record, defendant was married and had children aged 14 and 7, whom he supported and cared for. He also had a good employment record. While on work release, he held a job repairing wheelchairs, to which his employer wanted him to return after he completed his sentence. He operated a business selling gasoline from 2001 to

2003, and worked for his father's business from 1994 to 2001. Defendant had graduated from high school and completed a semester of post-secondary education. He did not appear to have substance abuse issues and had strong family support. As noted, he had done well on work release and it appeared likely that the state would release him after he served 27 months of the 36 month state sentence.

### 3. Needs of Public

I found no evidence suggesting that defendant was physically dangerous. However, he was a repeat defender and some confinement was necessary to reflect the seriousness of the offense, promote respect for law and provide just punishment.

### 4. Consideration of Guidelines and Policy Statements

The guidelines called for a term of 27-33 months, which under U.S.S.G. § 5G1.3(c) could run concurrently or consecutively to the state sentence he was serving. The PSR recommended a concurrent sentence, and I agreed. The instant offense was mitigated and defendant's character mostly positive. The state sentence was set to discharge on 7/9/06 or 10/9/05 if early release was approved, and he had already served about 24 months on that sentence. Further, defendant's state sentence arose out of the same circumstances as the instant offense. Thus, the factors listed in application note 3 to § 5G1.3 supported a concurrent sentence. In fact, they supported a fully concurrent sentence. This was the third criminal case arising out of the same search warrant, and all three cases were charged separately and resulted in separate sentences. The government may charge cases in this manner, but it is within a court's discretion to modify a defendant's sentence to mitigate the disparity resulting from a charging decision. Therefore, I concluded that I should adjust

5

defendant's sentence to account for the lost opportunity to serve more of it concurrently with the state sentence that defendant was serving.

As the Court explained in Witte v. United States, 515 U.S. 389, 404-05 (1995):

> There are often valid reasons why related crimes committed by the same defendant are not prosecuted in the same proceeding, and § 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding).

Under policy statement § 5G1.3(c), a court may adjust a sentence to, in effect, award "credit" for time already served on a prior, unrelated sentence in order to achieve the "coordination" discussed in Witte. United States v. Jones, 233 F. Supp. 2d 1067, 1076 (E.D. Wis. 2002); see also Ruggiano v. Reish, 307 F.3d 121, 124 (3d Cir. 2002). This is not the type of "credit" referred to in 18 U.S.C. § 3585(b), which the Bureau of Prisons has exclusive authority to grant (and which it would not grant in the present case). Rather, it is a downward adjustment granted by the court at the time of sentencing. Jones, 233 F. Supp. 2d at 1076. Such adjustments may be necessary to avoid unwarranted disparity resulting from the fortuity of charging decisions made by federal and state authorities.

In the present case, had all three offenses arising from the same warrant been prosecuted in a single federal indictment, defendant would likely have received a total sentence about equal to the combined state sentences. Under the 2000 version of the guidelines that would have applied, the OL for the forgery case would likely have been 12 under U.S.S.G. § 2F1.1 (base level 6, 2F1.1(a), plus 4 because, as the PSR stated, the amount involved in that case was $25,700, § 2F1.1(b)(1)(E), plus 2 for more than minimal planning, § 2F1.1(b)(2)). The OL on the drug possession case would have been 6 under

6

§ 2D2.1. And the OL on the instant offense was 14. Grouping these counts together under § 3D1.4,[1] the total OL would be 17, less 2 or 3 for acceptance of responsibility,[2] for a total level of 14 or 15. At the time of the execution of the warrant, defendant had 7 criminal history points, placing him in category IV. The resulting range would have been 30-37 months at OL 15 and 27-33 at OL 14. Defendant was serving a 36 month sentence on the state case, though it appeared that he would be released after serving 27 months of that sentence. He previously served 75 days on the drug charge, for a total of 29 ½ months (or 38 ½ if early release is denied). A total sentence of 29 ½ months for all of this conduct was consistent with the hypothetically combined guideline range and was, under all of the circumstances, adequate punishment. Therefore, I sentenced defendant to 3 months in prison, to run concurrently with the state sentence he was serving, which allowed for a fully concurrent term consistent with this analysis.

Though significantly below the guideline range applicable to the instant offense alone, this sentence was sufficient to satisfy the purposes of sentencing. The instant offense was simply not on par with those the Commission likely had in mind when it drafted § 2K2.1. As noted, defendant had no gun or any other apparent means of using the ammunition. There was no evidence he was sharing it or considered transferring it to others, and it had apparently been in his house for some time. Neither was there any indication in defendant's

---

[1] There was no indication that the offenses could have been grouped under § 3D1.2.

[2] In the instant matter, defendant only received a 2 level reduction under § 3E1.1 because the OL prior to the reduction was less than 16. However, in the hypothetical situation posited, the combined OL is 17, allowing for a full 3 level reduction under § 3E1.1.

record of violence or unlawful conduct with firearms, aside from mere possession as a prohibited person. Thus, a lengthy prison term was not necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, or to protect the public.

I also considered the impact the instant indictment had on defendant. He had moved to a work release center and was gainfully employed when the indictment issued. As a result, defendant lost his work release privileges and was moved to a secure facility. This obviously made his confinement more onerous.

### III.  CONCLUSION

For all of these reasons, a concurrent sentence of 3 months was sufficient but not greater than necessary to satisfy the purposes of sentencing under § 3553(a). Other conditions of the sentence appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 7th day of July, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge